Brady, J.
This action was commenced by the plaintiff as a judgment-creditor, to set aside as fraudulent, an assignment made by the defendant Raymond for the alleged benefit of creditors. The plaintiff, for success, relies upon two propositions.
First. That the assignor before the execution of the assignment, retained and disposed of portions of his property, with the intent of preventing all of it from passing under the assignment; and, secondly, that fraudulent preferences were made by bim.
In the consideration of the order appealed from, it will not be necessary to go into the details which were presented, upon the motion resulting in the order made.
Some of the allegations as to fraudulent practices it may, with great reason be said have been successfully assailed, and were it not for the preference given in the assignment, *869 to the wife of the assignor, the order might be regarded as erroneous and one to be reversed. The assignment bears date the 29th of December, 1886.
On the twenty-third of that month, two deeds were placed on record, by which the property, 51 East Sixty-fifth street, was conveyed by the assignor to one Charles H. McGuire and by him to Henrietta, the wife of the assignor, for the consideration of one dollar. There was also a preference in the assignment, to Mrs. Raymond, of $6,500, for stock, bonds and money loaned by her to the asssignor, which amount was then due and owing by him to her.
Mrs. Raymond, in order to justify the preference mentioned and the conveyance as well, made an affidavit, in which she set out as much in detail as no doubt she was able to do the facts affecting both of these incidents. She stated that her husband was' indebted to her for bonds, stocks, and other securities, to the extent of $6,500, upon the date of the assignment, and that it grew out of a loan made by her to him of certain stocks mentioned in the affidavit, worth in all the sum of $5,500, and which had been in her possession and ownership for several years and was delivered to her husband in May, 1886, and also a loan of $1,000 in money, made by her on the 15th of December, 1886, to her husband, making a total of $6,500, no part of which had ever been paid, except such amount as she had recovered from the assignee, amounting to $1,950.
She also states, that on the 11th of November, 1884, she was the owner of the property known as 51 East Sixty-fifth street, on which there then existed a mortgage of $10,000. That subsequently, at the request of her husband, she mortgaged that property for $21,000, that her husband took $11,000, and was really indebted to her in the latter amount, in addition to the moneys due to her from the stocks and loans, and she avers that no part of that indebtedness had been paid by the assignor.
■It appears from the examination of Mr. Raymond, under supplementary proceedings, that the consideration stated by him for the conveyance of the property in 1865, was that he promised he would pay her the half of whatever profits he might make in outside transactions consisting of stock and horse dealings; that he kept no account of such transactions and rendered none to his wife; that he contributed all the moneys necessary to embark in them; that his wife contributed nothing; that he paid $1,000 or $8,000, on account of them to his wife, and then makes the extraordinary statement that the dealings were unprofitable.
■lie corrected this statement however, by stating that *870 altogether he had made clear about $80,000, but when or in what amounts he was unable to state, having no account or memorandum to substantiate that statement. He further •stated that his wife had no money when he married her and that she never was engaged in any business. It will have .been observed from the statement made of the contents of Mrs. Raymond’s deposition that she does not assert the ownership of any separate estate, and that omission, if she could have said anything affirmative upon the subject, taken in connection with the declaration of her husband under oath, that she had no money when he married her, and had never engaged in any business, is quite conclusive that the transfer was made without any consideration.
It does not appear from the record what was the date of the deed to her which was recorded in December, just prior to the execution of the assignment; a suspicious circumstance, particularly as she asserts that she has been the owner of the premises since 1884. The failure to record the deed, if it were in truth executed in 1884, as may be implied from her declaration as to ownership, is also a suspicious circumstance, because the absence of it from the record would justify the conclusion that her husband was still its owner.'
And again, as affecting her interests seriously, if the deed were delivered in 1884 with the intention that the property should be transferred as indicated by its terms, and her husband was not at that time indebted or if the debts which he then owed had been subsequently paid, the transfer would be good against all debts subsequently created.
It appeared also in reference to the stocks that, according to the evidence of Mr. Raymond, all of them except possibly that of the Kings County Bank, were carried in his name, and appeared in his name on the books of the respective corporations; that he kept the whole of the stock commingled with the other stock and securities belonging to himself, that he dealt with it, and treated it as if it were his own property; that he never endorsed the shares or any of them over to his wife and when he made a transfer, transferred them to himself.
It is impossible to resist the impression upon consideration of these facts and circumstances, that the recording of the deed was prompted by the hope of protecting the property described in it from the creditors; and that the preference given to Mrs. Raymond was for the purpose of rescuing from the estate, and therefore in fraud of creditors, the amount of the preference stated. If the deed, which is the subject of preference really existed, and it might notwithstanding that Mrs. Raymond had no money when she was married and had never engaged in any business subsequently, *871 it was Ms duty to make that plain, which he would have had no trouble in doing if the claim had been one in good faith.
If for example, he had given to his wife at a time when he was incumbered by debts, sums of money for herself, and she had made a proper appropriation of them, and had subsequently loaned them to him, all of which could have been shown, he then would have become her debtor, but there was no attempt to develop any transaction of this character, and as before suggested, if there was a transfer of the property and a deed had been delivered with the intention of vesting the estate in his wife, that transaction could have been demonstrated by proper proofs. No effort to accomplish either of those results was made by the assignor or by his wife, nothing but bald statements, having nothing substantial to sustain them, and indeed offering nothing but matters of form which related to their creation and existence.
Such transactions vitiated the assignment, for the reason that if successful' they would operate as a fraud upon other persons whose debts were not preferred, inasmuch as they would deprive them of property belonging to the debtor to which they would lawfully be entitled in satisfaction of their debts in whole or in part. Talcott v. Hess, 31 Hun, 282.
Under such circumstances, there can be no doubt of the propriety of appointing a receiver to take possession of the assigned estate, and hold it until the determination of the issue presented by the pleadings.
The order must be affirmed, with ten dollars costs and disbursements.
Daniels, J.